Dennis v Cerrone (2024 NY Slip Op 03627)

Dennis

2024 NY Slip Op 03627

Decided on July 3, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 3, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., CURRAN, OGDEN, KEANE, AND HANNAH, JJ.

363 CA 23-00263

[*1]JOSEPH DENNIS, PLAINTIFF-APPELLANT,
v
VINCENT CERRONE, DEFENDANT, AND MARK CERRONE, INC., DEFENDANT-RESPONDENT.

DOLCE PANEPINTO, P.C., BUFFALO (JONATHAN M. GORSKI OF COUNSEL), FOR PLAINTIFF-APPELLANT. 
MAGAVERN MAGAVERN GRIMM, LLP, NIAGARA FALLS (EDWARD P. PERLMAN OF COUNSEL), FOR DEFENDANT-RESPONDENT.

Appeal from an order of the Supreme Court, Niagara County (Frank A. Sedita, III, J.), entered January 5, 2023. The order dismissed the amended complaint after a nonjury trial. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Plaintiff commenced this action seeking damages for injuries he sustained while working for a framing subcontractor on a residential construction project. The property owner, defendant Vincent Cerrone, served as his own general contractor on the project, which involved building a 900-square-foot addition to his home. The accident occurred when plaintiff fell through an unguarded hole in the first floor decking that was cut to accommodate a basement stairwell that had yet to be installed. Plaintiff landed on the cement basement floor approximately nine feet below.
The amended complaint asserted causes of action against Cerrone and defendant Mark Cerrone, Inc. (MCI), a contracting business partially owned by Cerrone, for common-law negligence and violations of Labor Law §§ 200, 240 (1), and 241 (6). Following discovery, Supreme Court (Boniello, III, J.) issued an order that, inter alia, granted Cerrone's cross-motion for summary judgment dismissing the amended complaint against him and granted MCI's cross-motion insofar as it sought summary judgment dismissing the Labor Law § 240 (1) cause of action against it. We modified the order by denying MCI's cross-motion in its entirety and reinstating the section 240 (1) cause of action against it, and otherwise affirmed (Dennis v Cerrone, 167 AD3d 1475, 1477 [4th Dept 2018]).
Upon remittal, the matter proceeded to a nonjury trial on all four causes of action against MCI, the only remaining defendant. At the close of plaintiff's case, the court granted a directed verdict to MCI, but on appeal we reinstated the amended complaint against MCI and granted a new trial (Dennis v Cerrone, 192 AD3d 1572, 1573 [4th Dept 2021]). Viewing the evidence in the light most favorable to plaintiff, we concluded that there was "a rational process by which a factfinder could find that MCI had either the power to enforce safety standards and choose responsible contractors or the power to coordinate and supervise the overall project as required for liability under Labor Law §§ 240 (1) and 241 (6)" (id. at 1573). With respect to the other causes of action, we concluded that there was "a rational process by which a factfinder could determine that MCI is liable under Labor Law § 200 or the common law, i.e., that it had the ability to supervise and control the method and manner of work of plaintiff's employer . . . , and that MCI actually exercised such authority" (id.).
At the retrial, Supreme Court (Sedita, III, J.), sitting as the trier of fact, rendered a verdict in favor of MCI. Plaintiff now appeals from an order dismissing the amended complaint against [*2]MCI based upon that verdict, contending that he met his burden of proof on all causes of action. We affirm.
It is well settled that a verdict in a nonjury civil trial "should not be disturbed upon appeal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence, especially when the findings of fact rest in large measure on considerations relating to the credibility of witnesses" (Thoreson v Penthouse Intl., 80 NY2d 490, 495 [1993], rearg denied 81 NY2d 835 [1993] [internal quotation marks omitted]; see Tarsel v Trombino, 196 AD3d 1100, 1101 [4th Dept 2021]; Livingston v State of New York, 129 AD3d 1660, 1660 [4th Dept 2015], lv denied 26 NY3d 903 [2015]). When conducting our factual review power in a "close case," we must take into account " 'the fact that the trial judge had the advantage of seeing the witnesses' " (Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [1983]), and we must view the evidence "in the light most favorable to sustain the [order or] judgment" (A & M Global Mgt. Corp. v Northtown Urology Assoc., P.C., 115 AD3d 1283, 1287 [4th Dept 2014]).
Here, plaintiff introduced evidence at trial, as he had done in opposition to MCI's cross-motion for summary judgment, supporting his claim that MCI acted as a contractor, or the agent of a contractor, on the construction project. For instance, the evidence established that a site superintendent for MCI recommended contractors for Cerrone to hire, met with some of the contractors at the worksite, solicited a bid for lumber on Cerrone's behalf, and, upon seeing the unguarded hole in the floor through which plaintiff later fell, told framing workers that it should be covered. Plaintiff further established that a laborer employed by MCI was occasionally at the worksite and performed various tasks for Cerrone, such as cleaning debris, using an excavator owned by MCI to demolish the garage, and spreading stone on the driveway. There was also evidence that MCI provided a flatbed trailer and driver to deliver the driveway stones and certain equipment to the worksite, and that Cerrone used MCI's corporate account to purchase lumber and concrete.
On the other hand, however, there was ample evidence militating against a finding that MCI, as opposed to Cerrone himself, had the power to enforce safety standards and hire responsible contractors. For instance, MCI had never performed residential construction work; it was a general site contractor that primarily performed road and sewer work for municipalities. MCI did not hire or pay any of the contractors who worked on the construction project at Cerrone's home, and Cerrone, who owned only 34% of MCI, did not have authority to bind MCI without the consent of the majority owner. In fact, the majority owner had no idea that Cerrone was doing construction work at his residence; she learned about the project after plaintiff's accident. MCI was a union shop, meaning that it used only union workers on its projects, and the contractors who worked on the construction project at Cerrone's residence used nonunion labor. More importantly, the two MCI employees who appeared periodically at the worksite testified that they did not have authority to enforce safety standards or to direct or supervise any of the work, and their testimony was not contradicted by plaintiff, his employer or any other witness who performed work on the construction project. Not a single person who performed work on the project testified that he or she believed that MCI had authority to enforce safety standards or to direct or control the work.
Viewing the record in the light most favorable to sustain the order and giving deference to the trial court's credibility determinations (see Howard v Pooler, 184 AD3d 1160, 1163 [4th Dept 2020]), we conclude that there is "a fair interpretation of the evidence" supporting the court's verdict (Meyers v Berl, 213 AD3d 1233, 1234 [4th Dept 2023]), and that the verdict is therefore not against the weight of the evidence (see generally Tarsel, 196 AD3d at 1101; Livingston, 129 AD3d at 1660).
Entered: July 3, 2024
Ann Dillon Flynn
Clerk of the Court