Williams v State of New York (2020 NY Slip Op 05334)





Williams v State of New York


2020 NY Slip Op 05334


Decided on October 2, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 2, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., CARNI, LINDLEY, CURRAN, AND TROUTMAN, JJ.


364 CA 19-00729

[*1]CALVIN WILLIAMS, CLAIMANT-APPELLANT,
v
STATE OF NEW YORK, DEFENDANT-RESPONDENT. (CLAIM NO. 122732.) 






SUGARMAN LAW FIRM, LLP, SYRACUSE (JENNA W. KLUCSIK OF COUNSEL), FOR CLAIMANT-APPELLANT.
LETITIA JAMES, ATTORNEY GENERAL, ALBANY (SARAH L. ROSENBLUTH OF COUNSEL), FOR DEFENDANT-RESPONDENT. 


 Appeal from a judgment of the Court of Claims (Walter Rivera, J.), entered October 17, 2018. The judgment dismissed the claim. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed without costs.
Memorandum: Claimant commenced this action seeking damages for injuries that he allegedly sustained when, while squat lifting a barbell weighing approximately 500 pounds in the weight room at Mid-State Correctional Facility, the squat rack onto which he dropped the weights tipped over, causing claimant to fall backwards and hit his neck on the barbell. After a nonjury trial, the Court of Claims rendered a verdict in favor of defendant and dismissed the claim. We affirm.
Claimant contends that the verdict is against the weight of the evidence because, inter alia, the court erred in concluding that the doctrine of primary assumption of the risk precluded the claim. We reject that contention. "While it is well settled that this Court has the authority to independently consider the weight of the evidence on an appeal in a nonjury case, deference is still afforded to the findings of the [court] where, as here, they are based largely on credibility determinations" (Payne v State of New York, 144 AD3d 1490, 1491 [4th Dept 2016] [internal quotation marks omitted]; see Janczylik v State of New York, 126 AD3d 1485, 1485 [4th Dept 2015]). "Moreover, '[o]n a bench trial, the decision of the fact-finding court should not be disturbed upon appeal unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence' " (Black v State of New York [appeal No. 2], 125 AD3d 1523, 1525 [4th Dept 2015]; see City of Syracuse Indus. Dev. Agency [Alterm, Inc.], 20 AD3d 168, 170 [4th Dept 2005]).
The doctrine of assumption of the risk provides that "voluntary participants in sports activities may be held to have consented, by their participation, to those injury-causing events which are known, apparent, or reasonably foreseeable consequences of their participation" in such events (Lee v Maloney, 270 AD2d 689, 690 [3d Dept 2000] [internal quotation marks omitted]; see generally Custodi v Town of Amherst, 20 NY3d 83, 88 [2012]). Where, as here, a participant in a sports activity alleges that his or her injury was caused by a dangerous condition in equipment provided by a defendant, "the application of the assumption of risk doctrine . . . requires that the participant have not only knowledge of the injury-causing defect but also appreciation of the resultant risk" (Morgan v State of New York, 90 NY2d 471, 485-486 [1997] [internal quotation marks omitted]). Ascertaining a participant's awareness of the risk "is not to be determined in a vacuum[, but] rather, [is] to be assessed against the background of the skill and experience of the particular [participant]" (id. at 486 [internal quotation marks omitted]; see Bukowski v Clarkson Univ., 19 NY3d 353, 356-357 [2012]; Kingston v Cardinal O'Hara High [*2]Sch., 144 AD3d 1672, 1674 [4th Dept 2016], lv denied 28 NY3d 914 [2017]).
Here, we conclude that a fair interpretation of the evidence supports the court's conclusion that claimant assumed the risk of being injured when he did not use a spotter while lifting a barbell weighing approximately 500 pounds. The evidence at trial established the importance of using a spotter when lifting approximately 500 pounds, and that claimant was an experienced weight lifter who knew about the potential risk of being injured by not using a spotter while lifting such a weight. Moreover, claimant testified that the squat rack in the weight room was not bolted to the floor and that he had previously seen it shake and move while in use, which put claimant on notice that simply dropping a significant amount of weight on the rack could be unsafe, necessitating the use of a spotter.
Claimant contends that the doctrine does not apply because the dangerous nature of the squat rack was a latent defect that was "not . . . typically known, apparent, or reasonably foreseeable" (Repka v Arctic Cat, Inc., 20 AD3d 916, 919 [4th Dept 2005]; see Alqurashi v Party of Four, Inc., 89 AD3d 1047, 1047-1048 [2d Dept 2011]). We reject that contention. Here, as noted above, claimant was aware of the squat rack's purported defect—i.e., that it shook and moved while in use. This is not a case where the defect was not readily apparent or not the sort of risk that a participant appreciates when engaged in that activity. Rather, the mechanism of the injury in this case was squarely related to the manner in which claimant lifted weights, and the evidence supports the conclusion that it was reasonably foreseeable that a person lifting weights has a risk of injury if he or she is unable to perform the act of lifting the weights.
In light of the foregoing, claimant's remaining contentions are
academic.
Entered: October 2, 2020
Mark W. Bennett
Clerk of the Court